IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TODD B.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 6888 |
| v. ) | |
| ) | Magistrate Judge |
| KILOLO KIJAKAZI, Acting ) | Maria Valdez |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Todd B.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 13] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 19] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On June 26, 2019, Plaintiff filed a claim for DIB, alleging disability since September 26, 2012. A hearing was held on April 9, 2018, at which Plaintiff, Plaintiff's wife, and a vocational expert ("VE") testified. On June 27, 2018, an Administrative Law Judge ("ALJ") denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then remanded the case and directed the ALJ to give further consideration to Plaintiff's maximum residual functional capacity and to obtain supplemental evidence from a VE to determine whether Plaintiff had acquired transferable skills. Following remand, a second hearing before the same ALJ was held on December 13, 2019, at which Plaintiff and a different VE testified. On January 24, 2020, the ALJ again denied Plaintiff's claim, finding him not disabled under the Act. The Appeals Council then again remanded the case and directed the ALJ to give further consideration to whether Plaintiff has past relevant work. The Appeals Council further directed that the case be assigned to a different ALJ.

A third hearing before the second ALJ was held on August 17, 2020. The hearing was conducted telephonically due to the Coronavirus pandemic. At the telephonic hearing, Plaintiff and a third VE testified. Plaintiff was represented by counsel. On August 26, 2020, the ALJ again denied Plaintiff's claim for benefits, finding him not disabled under the Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's August 26, 2020 decision as the final decision

of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

In the ALJ's August 26, 2020 decision, Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of September 26, 2012 through his date last insured of March 31, 2018. At step two, the ALJ concluded that, through the date last insured, Plaintiff had the following severe impairments: lumbar degenerative disc disease; degenerative joint disease of the right knee and shoulders; and obesity. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; needed to avoid workplace hazards, including unprotected heights, moving mechanical parts, and operating motor vehicles; and needed to avoid pulmonary irritants, including dust, fumes, and odors. At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a protective service caseworker or child welfare caseworker. However, at step five, based upon the VE's

testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Act.

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the

4

burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision

5

must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors

his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erroneously neglected to consider certain VE testimony; (2) the ALJ improperly rejected Plaintiff's subjective symptoms; and (3) the ALJ failed to assess Plaintiff's RFC properly. Each argument will be addressed below in turn.

### A. The ALJ's Consideration of VE Testimony

Plaintiff's first argument boils down to his assertion that "[t]he ALJ failed to articulate even minimally why she accepted the testimony of the VE at the third hearing that Plaintiff had acquired skills from his past relevant work that would transfer to sedentary work, instead of the testimony of the VE at the second hearing that Plaintiff had acquired no skills transferrable to sedentary." (Pl.'s Br. at 7.) However, "Seventh Circuit opinions . . . have on numerous occasions reinforced that a claimant who fails to question or raise an objection to the VE's testimony during the hearing forfeits that objection on appeal." *Tina I. v. Kijakazi*, No. 3:20-cv-50327, 2022 U.S. Dist. LEXIS 3454, at *5 (N.D. Ill. Jan. 7, 2022) (citations omitted). Here, as Defendant points out, Plaintiff, who was represented by counsel, had every opportunity to question the VE at the third hearing regarding transferability of skills, but Plaintiff did not do so. Accordingly, Plaintiff has forfeited any objection or claimed deficiency with respect to the ALJ's consideration of the third VE's testimony concerning transferability of skills, and his first argument must fail. *See*

7

*Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) ("Brown also forfeited her argument regarding the vocational expert's testimony . . . by failing to object during the hearing.") (citation omitted); *Jason L. v. Saul*, No. 19 C 6291, 2021 U.S. Dist. LEXIS 88750, at *15 (N.D. Ill. May 10, 2021) ("[C]ounsel did not object at the hearing to the vocational expert's classification of the guard job, so the argument is waived.").

      B.      <u>**The ALJ's Assessment of Plaintiff's Subjective Symptoms**</u>

As to a claimant's subjective symptoms, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). In advancing his second argument, Plaintiff principally contends that the ALJ did not sufficiently address his alleged medication side effects. Pertinent to that argument, at the first hearing, Plaintiff testified tersely that his medication "makes [him] sleepy." (R. 119.) Plaintiff did not testify in particular as to any side effects at the second or third hearings. Consistent with Plaintiff's limited testimony, the ALJ noted in her decision that Plaintiff had "said that his medications caused him to become drowsy. (*Id.* at 25.) Plaintiff now points to other documents concerning his alleged side effects and maintains that "[t]he ALJ's evaluation of medication side effects in the case at bar was utterly inadequate." (Pl.'s Br. at 10-11.) The Court disagrees.

8

"At the hearing, Claimant had the burden to prove [his] disability." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (citation omitted). "Where a claimant is represented by counsel at the hearing, the Seventh Circuit permits the ALJ to assume the claimant is making her strongest case for benefits." *Miller v. Colvin*, No. 12 CV 50440, 2015 U.S. Dist. LEXIS 54874, at *16 (N.D. Ill. Apr. 27, 2015) (citations omitted); *Joseph M. v. Saul*, No. 18 C 5182, 2019 U.S. Dist. LEXIS 218539, at *24-25 (N.D. Ill. Dec. 19, 2019) ("[B]ecause Mr. M. was represented by an attorney at the hearing, the ALJ could assume that, by his testimony, Mr. M. was making his strongest case for benefits.") (citation and internal quotations omitted). Here, considering the short shrift given by Plaintiff to his alleged side effects at the hearings, the Court finds that Plaintiff did not meet his burden of proving that his side effects significantly impacted his ability to work. *See Turner v. Colvin*, 12 CV 10229, 2014 U.S. Dist. LEXIS 99604, at *35 (N.D. Ill. July 22, 2014) ("Nor has Turner pointed to evidence showing that these side effects contribute to the effects of her other symptoms. It is Turner's burden to establish the severity of her symptoms.") (citation omitted); *Pimentel v. Astrue*, No. 11 CV 8240, 2013 U.S. Dist. LEXIS 2548, at *34 (N.D. Ill. Jan. 8, 2013) ("Because it is [the claimant's] burden to establish the severity of his symptoms, and he has not met that burden with respect to his medication side effects, the ALJ did not commit reversible error in failing to address them in his RFC assessment."). Moreover, as Defendant points out, the ALJ's decision detailed the objective examination findings throughout the record that were inconsistent with significantly limiting drowsiness, such as the findings

9

that Plaintiff was alert, oriented, and generally able to correctly answer questions in cognitive testing. (R. 20.)

Plaintiff also takes issue with the ALJ's consideration of his travel as a basis to undermine his alleged symptoms. On that topic, the ALJ noted that Plaintiff "admitted at an earlier hearing that he had taken multiple out-of-state trips following his alleged disability onset date, including at least one trip overseas, during which he traveled by airline." (R. 29.) The ALJ reasoned that "[t]his travel is inconsistent with [Plaintiff's] claims of debilitating pain, and need for frequent position changes." (*Id.*). The ALJ was entitled to consider Plaintiff's travel in considering the veracity of his alleged symptoms. *See Ortega v. Berryhill*, No. 17 C 2527, 2018 U.S. Dist. LEXIS 147959, at *15 (N.D. Ill. Aug. 30, 2018) ("[I]t was permissible for the ALJ to generally consider how Plaintiff's ability to travel would undermine his credibility. . . . Thus, to the extent that the ALJ considered Plaintiff's ability to go to Mexico and California as part of his overall credibility determination, no error occurred. Accordingly, the Court will not remand on this point.") (citation omitted); *Dallas E.H. v. Kijakazi*, No. 20 C 2717, 2021 U.S. Dist. LEXIS 193956, at *23 (N.D. Ill. Oct. 7, 2021) ("The ALJ's reasoning with respect to Dallas's trip to Kentucky supports her discounting his testimony about the effectiveness of his treatment. . . . Thus, the ALJ did not err in considering Dallas's trip to Kentucky as further reason to doubt that Dallas's treatment was ineffective in improving his symptoms.") (citation omitted). Here, the ALJ sufficiently supported her inference that Plaintiff's demonstrated ability to travel by airplane

10

was inconsistent with Plaintiff's alleged need to frequently change positions. *Cf. Murphy v. Colvin*, 759 F.3d at 817 ("[T]he ALJ's assessment is problematic because the evidence does not support the inference the ALJ draws between Murphy's symptoms and her ability to take a vacation.").

Ultimately, Plaintiff has not shown that the ALJ's evaluation of his alleged symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018). Accordingly, the Court finds Plaintiff's arguments predicated on his subjective symptoms unavailing.

## C.     The ALJ's Evaluation of Plaintiff's RFC

In arguing that the ALJ's RFC assessment was deficient, Plaintiff contends that the ALJ improperly evaluated his carpal tunnel syndrome. In her decision, the ALJ reasoned as follows on that topic:

> Carpal tunnel syndrome is not a medically determinable impairment because the record fails to establish any anatomical or physiological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques prior to the date last insured. The claimant underwent nerve conduction testing of the bilateral upper extremities on October 22, 2019, well over a year following his date last insured, which showed findings consistent with "moderate" left and "mild" right-sided carpal tunnel syndrome, but the record does not contain any evidence to establish that this condition was extant prior to the claimant's date last insured. In fact, during a consultative medical examination performed in July 2016, the claimant demonstrated full grip strength and normal dexterity in his hands. Since there is no objective evidence from an acceptable medical source to support the presence of carpal tunnel syndrome prior to his date last insured, I find that there is no medically determinable impairment of carpal tunnel syndrome during the period under consideration.

(R. 23 (citations omitted).)

11

Plaintiff asserts that the ALJ erred in basing her conclusion as to carpal tunnel syndrome on a lack of objective evidence during the pertinent timeframe (*i.e.*, before Plaintiff's date last insured). The Court disagrees, and finds that it was proper for the ALJ to consider the lack of objective evidence. *See Aitken v. Barnhart*, No. 03 C 5354, 2004 U.S. Dist. LEXIS 6137, at *15 (N.D. Ill. Apr. 9, 2004) ("There is an absence of objective medical evidence in the record to support Aitken's claim that he was disabled and has not been able to work as of his date last insured."). Moreover, with respect to Plaintiff's carpal tunnel syndrome, the ALJ's treatment was proper as she did not solely rely on a *lack* of objective evidence supporting greater limitations, she also properly relied on the *presence* of objective evidence showing relatively normal functioning (*i.e.*, full grip strength and normal hand dexterity as of 2016). The Court also rejects Plaintiff's contention that the ALJ's reasoning did not sufficiently account for his own testimony that his carpal tunnel syndrome extended back to before his date last insured. *See Paul F. v Saul*, No. 19 C 1594, 2020 U.S. Dist. LEXIS 152705, at *11-12 (N.D. Ill. Aug. 24, 2020) ("[The ALJ] reasonably concluded that [claimants] statements regarding the limiting effects of [his] impairments prior to and well after the DLI were not supported by objective evidence.").

Finally, Plaintiff argues that the ALJ erred in giving low weight to the February 21, 2017 neuropsychological assessment of Dr. Frederick Bylsma. In her decision, the ALJ noted Dr. Bylsma's evaluation and some findings in the "severely impaired range," with deficits in memory, cognitive flexibility, and visual

12

construction. (R. 20). However, the ALJ discounted Dr. Bylsma's findings, noting that Dr. Bylsma himself "recommended that his findings be interpreted with a 'degree of caution' . . . since some measures of the claimant's consistency of effort during testing produced results in the 'questionable range.'" (*Id.*) The ALJ further reasoned that "the extraordinary deficits and 'severe' difficulties found by Dr. Bylsma are inconsistent with the record as a whole," given that "the claimant's treatment providers almost universally recorded normal or otherwise unremarkable memory and cognitive functioning, with no mention in their examination reports of dizzy spells." (*Id.*) Plaintiff contends that this analysis was flawed and the opinions of Dr. Bylsma, as an examiner, should have been given greater weight. The Court disagrees.

An ALJ "is required to consider a consultative examiner's opinion and explain the weight given to such an opinion in his decision." *Lucio v. Barnhart*, No. 03 C 7078, 2004 U.S. Dist. LEXIS 12207, at *38 (N.D. Ill. June 22, 2004) (citation omitted). However, "[a]n ALJ may discount the opinion of a consultative examiner . . . as long as he provides good reasons for doing so." *Johnny T. Saul*, No. 17 C 8671, 2020 U.S. Dist. LEXIS 3387, at *13 (N.D. Ill. Jan. 9, 2020) (citation omitted). Here, as set forth above, the ALJ explained the weight she gave to Dr. Bylsma's opinions and articulated good reasons for finding the opinions unpersuasive. The ALJ was entitled to give limited weight to Dr. Bylsma's opinions on the basis that they were generally inconsistent with the medical evidence of record as a whole. *See Peters v. Berryhill*, No. 16 CV 6901, 2018 U.S. Dist. LEXIS 62031, at *24 (N.D. Ill. Apr. 12,

13

2018) ("Here, the ALJ was clear in his reasoning for discounting Dr. Middleton's opinions. Dr. Middleton did indeed make some objective findings during her consultative examination. . . . But overall, the ALJ found that her conclusions were over general, based primarily on the Claimant's subjective complaints, and were unsupported by the record as a whole.") (citation omitted). Moreover, the ALJ was, of course, entitled to give limited weight to Dr. Bylsma's opinions based on the fact that *Dr. Bylsma himself* questioned the validity of his findings due to Plaintiff's lack of effort during testing. Accordingly, the ALJ did not err in her assessment of Dr. Bylsma's opinions.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 13] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 19] is granted.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez* (signature)

**DATE:   June 14, 2022**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**